# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

JASON REESE,

    Petitioner,

           Case No. 1:08-cv-630

-vs-

           District Judge Sandra S. Beckwith
           Magistrate Judge Michael R. Merz

WARDEN, Warren Correctional Institution,

    Respondent.

## REPORT AND RECOMMENDATIONS

This habeas corpus case under 28 U.S.C. § 2254 is before the Court for decision on the merits. Petitioner, with the assistance of counsel, pled four grounds for relief, but has conceded that Grounds Two, Three, and Four are procedurally defaulted, as Respondent had argued (Traverse, Doc. No. 15, at 9.) This Report therefore analyzes only Ground One:

> **GROUND ONE:** The doctrine of transferred intent does not apply to a criminal case when the type of harm that was intended is not the same as the type of harm that resulted. Fifth and Fourteenth Amendments to the United States Constitution, and Section 16, Article I of the Ohio Constitution. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

### Procedural History

Petitioner accepts[1] the Warden's recitation of procedural history which is as follows, shortened to eliminate matter not relevant to the analysis here:

---

[1] With the exception of noting this case is brought through counsel, rather than *pro se*.

Reese was indicted twice by a Hamilton County Grand Jury in Case Nos. B0601265 and B0601713. On February 17, 2006, Case no. B060125, Reese was indicted with one count of felonious assault with three firearm specifications relating to the victim George Fiorini. (Exhibit 2) He was indicted in Case No. B0601713 on March 6, 2006, with two counts of felonious assault, each with two firearm specifications relating to the victim Horace Ralston. (Exhibit 1) Reese, through counsel, entered a plea of not guilty on all counts and the case was set for a jury trial. Reese was found guilty of all charges. On June 30, 2006, he was sentenced to an aggregate sentence of ten years in Case Nos. B0601265 and B0601713. (Exhibits 3 & 4).

Reese, through counsel, timely appealed both verdicts to the First District Court of Appeals, Hamilton County, Ohio, Case Nos. C060576, C060577 and set forth the following assignments of error in both cases:
I. The evidence was insufficient and/or the evidence was against the manifest weight of the evidence to sustain appellant's convictions for felonious assault. (Trial case number B0601265: Td. 42-45; Trial case number B0601613: Td. 12-17)

II. The trial court erred as a matter of law by improperly sentencing appellant to consecutive sentences on the gun specifications. (Trial case number B0601265: Td. 48)

(Exhibit 5) The State filed their response. (Exhibit 6) On August 24, 2007, the Court of Appeals affirmed the trial court's decisions. (Exhibit 7).

Reese, *pro se*, on September 26, 2007, timely appealed to the Ohio Supreme Court under Case No. 07-1780. In his memorandum in support of jurisdiction, Reese asserted the following propositions of law:

I. Was the evidence the State of Ohio adduced at trial insufficient as a matter of law to sustain appellant's convictions for felonious assault? (Trial case number B0601265: Td. 42-45; Trial case number B0601713: td. 12-17)

II. Did the trial court err as a matter of law by improperly sentencing appellant to consecutive sentences on the gun specifications? (Trial case number B0601265: td. 48)(Exhibit 11)

Then on October 9, 2008, Reese, through counsel, filed an amended

memorandum in support of jurisdiction that asserted the following propositions of law:

I. The doctrine of transferred intent cannot not apply in a criminal case when the type of harm that was intended is not the same as the type of harm that resulted. Fifth and Fourteenth Amendments to the United States Constitution, and Section 16, Article I of the Ohio Constitution. [. . . . four other propositions of law not relevant to this habeas case] (Exhibit 12) Reese's second pleading filed through counsel supplanted Reese's first pleading in his pro se memorandum. (Exhibit 12, Memorandum in Support of Jurisdiction, p. 2) The State did not respond.

On January 23, 2008, the Ohio Supreme Court denied leave to appeal and dismissed the appeal "as not involving any substantial constitutional question." (Exhibit 13)

(Return of Writ, Doc. No. 9, at 3-6.)

The Hamilton County Court of Appeals found the following facts, which Petitioner also accepts:

> [*P2] In February 2006, Reese joined two acquaintances, Andrew Hrezo and Curtis Williams, at a saloon. After the three had been drinking awhile, Williams made disparaging remarks to a female bar patron, Diana Victoriano. Victoriano was at the bar with her boyfriend, Ryan Skelskey, and four of Skelskey's friends, including Horace Ralston and Bennie Beckman. When Williams continued to make remarks about Victoriano, Skelskey and his friends became angry.
>
> [*P3] At this point, two different accounts unfolded. According to Victoriano and her friends, after some hostile words were exchanged, Hrezo, Williams, and Reese left the bar. Victoriano and Skelskey also wanted to leave the bar after the confrontation, but did not want to get "jumped" on the way to their car, so they asked Ralston, Beckman, and others to walk them to their car. When they left the bar, they saw Hrezo, Williams, and Reese cross a nearby street.
>
> [*P4] Ralston verbally engaged Hrezo, Williams, and Reese, took his shirt off, and asked them if they wanted to fight. Hrezo, Williams, and Reese moved quickly to Hrezo's car as Ralston and others

approached. As they got into the car, Reese pulled a gun out and warned Ralston to back up. But Ralston continued to approach with his hands in the air. Reese got in the car, rolled down the window, and fired three shots--one bullet grazed Ralston's ear, one bullet went through Ralston's arm, and one bullet entered the windshield of George Fiorini's vehicle. (One of the bullets that hit Ralston also hit Fiorini's car a second time.) Fiorini was not otherwise involved; he just happened to be driving by.

[*P5] In a somewhat different version of the events, Hrezo, Williams, and Reese all claimed that after Williams made his disparaging remarks about Victoriano, Ralston intervened and threatened to pull a knife out and stab them. They left the bar and proceeded to walk quickly to their car, but Ralston and others followed. Reese pulled his gun out because, he maintained, Ralston was waving a knife at him and threatening to stab him.

[*P6] Reese also stated that he warned Ralston and the others to back up and let them leave, but the men continued to approach. After Hrezo, Williams, and he got in the car, Reese testified, Ralston and Beckman surrounded the car and blocked their ability to drive away. Reese admitted to then rolling down the window to fire "warning shots," but he did not know that any of the bullets had hit Ralston or Fiorini's vehicle.

(Quoted at Return of Writ, Doc. No. 9, at 2-3.)

**Analysis**

Petitioner's claim is grounded in the Fourteenth Amendment Due Process Clause[2] which requires that a state criminal conviction be supported by proof beyond a reasonable doubt as to every element of the offense. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794

---

[2] Ground One also pleads that the conviction is unconstitutional under Article I, § 16 of the Ohio Constitution. However, only federal constitutional claims are cognizable in a § 2254 case.

(6th Cir. 1990)(en banc). Reese was charged with a convicted of felonious assault on George Fiorini based on the fact that two of the shots he fired at Horace Ralston hit Fiorini's car, damaging the vehicle but causing no physical harm to Fiorini. To obtain this conviction, the prosecution relied on the doctrine of transferred intent. Analyzing that doctrine, the Court of Appeals held:

> [*P20] Reese also argues, under case number B-0601265, that he did not knowingly cause or attempt to cause physical harm to Fiorini, and that the doctrine of transferred intent did not apply.
>
> [*P21] The doctrine of transferred intent provides that where an individual is attempting to harm one person and as a result accidentally harms another, the intent to harm the first person is transferred to the second person, and the individual attempting harm is held criminally liable as if he both intended to harm and did harm the second person. *See State v. Crawford*, 10th Dist. No. 03AP-986, 2004 Ohio 4652, *citing State v. Mullins* (1992), 76 Ohio App.3d 633, 636, 602 NE.2d 769.
>
> [*P22] In the present case, Reese was convicted of felonious assault for knowingly attempting to cause physical harm to Fiorini. Reese did not intend to harm Fiorini or to damage his vehicle. Thus the issue was whether Reese should have been held criminally liable for an attempt to cause physical harm to Fiorini based on his intent to assault Ralston.
>
> [*P23] We hold that the doctrine of transferred intent was properly applied to the offense involving Fiorini. Where the defendant shoots wildly in a business district and one of the shots enters the passenger compartment of an occupied automobile, the conviction for attempting to cause serious physical harm should stand. The fact that there was no physical harm to Fiorini's person is irrelevant; the statute did not even require physical harm to the intended victim. If Reese had merely struck the intended victim's car, the conviction would have been proper. Under the law, the unintended victim is accorded the same protection as the intended victim. The intent is what is transferred, not the harm.
>
> [*P24] Accordingly, we overrule the first assignment of error.

*State v. Reese*, 2007 Ohio App. LEXIS 3866 at *9-10, (Ohio App. 1st Dist. Aug. 24, 2007).

Judge Painter dissented on this point and would have held that "the doctrine of transferred

intent does not apply when the crime charged is an attempt offense and when the type of harm intended and the type of harm that resulted are not the same." *Id*. at *18-19. He traced the development of the doctrine from its origins in medieval English criminal law and discussed its application in other American States. *Id*. Most significantly for this Court's purposes, Judge Painter noted:

> Although the Ohio Supreme Court has applied the doctrine of transferred intent when the defendant 'intentionally acts to harm someone but ends up accidentally harming another,' the court has not decided whether the doctrine of transferred intent should be used to impose criminal liability upon a defendant when the resulting harm or injury is not the same type of harm intended.

*Id*. at *14. Nothing in the majority opinion suggests Judge Painter is wrong on this point. No other apposite Ohio law is cited in either opinion. Thus the only Ohio law deciding whether the doctrine of transferred intent is properly applicable in a case such as this is the majority opinion in this very case.

Petitioner raised this claim in the Ohio courts as part of a claim of insufficiency of the evidence. Such a claim is cognizable in a federal habeas corpus action because the Due Process Clause requires that there be sufficient evidence to prove a defendant guilty of every element of a crime. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(en banc). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

To the extent the Petition is read to claim that the appellate majority misread Ohio common law on the legal question of transferred intent, Petitioner has not stated a claim for habeas corpus

relief. This Court has no constitutional power to substitute its judgment for that of an Ohio court of appeals on what the Ohio law is or ought to be. To put it another way, the proof at trial was plainly sufficient to prove a felonious assault by Petitioner on Horace Ralston and it is in the first instance a question of Ohio law whether the intent applicable to Ralston can be transferred to Fiorini.

Petitioner argues that the state court's "interpretation of transferred intent is contrary to clearly established Federal law." (Traverse, Doc. No. 15, at 6.) However, the only federal authority cited is *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). In that case a defendant had set fire to a neighbor's apartment in an attempt to kill his former girlfriend and her new boyfriend, but killed the neighbor's two-year-old child instead. *Richey* actually supports the Warden's position here. The Sixth Circuit had held that transferred intent was not available under Ohio law to convict, but the Supreme Court held that the Ohio Supreme Court's explanation of Ohio transferred intent law in the *Richey* case itself was "perfectly clear and unambiguous" and

> We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus. *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991); *Mullaney v. Wilbur*, 421 U.S. 684, 691, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975).

*Id*. at 76. The Ohio Supreme Court's statement of the transferred intent doctrine as it applied to the *Richey* case was indeed straightforward, but the Ohio court did not says that the doctrine cannot be applied in other circumstances, including ones like those in this case. And two years later, in this very case, Judge Painter wrote that the Ohio Supreme Court had not yet decided the transferred intent question which this case presents.

Petitioner's other authority, from the Model Penal Code and other sources, is persuasive

common law scholarship, but a federal habeas court sits only to decide federal constitutional questions. No clearly established federal constitutional law as announced by the United States Supreme Court holds that the transferred intent doctrine cannot be applied to a case such as this.

**Conclusion**

The Petition should be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied leave to appeal *in forma pauperis* and any requested certificate of appealability.

November 24, 2009.

s/ **Michael R. Merz**
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).